Filed 5/31/23  P. v. Lopez CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B323327 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA124509) |
| v. | |
| MARIA DELALUS LOPEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rob B. Villeza, Judge.  Affirmed.

Lise M. Breakey, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

————————————

## INTRODUCTION

Defendant Maria Delalus Lopez pleaded no contest to second degree robbery (Pen. Code,[1] § 211) pursuant to a plea agreement, after which the court suspended imposition of sentence and placed Lopez on formal felony probation for a period of five years.  Approximately one and a half years into her probation term, Lopez was arrested for possessing a stun gun, pepper spray and methamphetamines, all in violation of her terms of probation.  At a probation violation hearing, the court found Lopez had possessed a stun gun and pepper spray, revoked her probation, and sentenced her to two years in prison, the low term for second degree robbery.

Lopez appealed.  Her appellate counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), identifying no issues on appeal and requesting that we independently review the record to determine whether there are any arguable issues.  Lopez was notified that she could submit a letter or brief stating any grounds for an appeal, or contentions or arguments that she wishes this court to consider.  Lopez did not submit any letter or brief.

We have reviewed the record and found no arguable issues, and we therefore affirm.

## BACKGROUND

In an amended information filed on June 30, 2020, the People charged Lopez with second degree robbery.  (§ 211; see § 212.5 [degrees of robbery].)  A conviction of second degree

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

robbery carries a prison term of two, three, or five years. (§ 213.) The People alleged that the offense was a "serious felony" or a "violent felony" mandating that prison custody time for the offense be served in state prison. (§ 1170, subd. (h)(3).)

On November 2, 2020, Lopez waived her trial rights and pleaded no contest to the charge, agreeing to be placed on formal probation for five years. The parties stipulated to a factual basis for the plea and the court accepted Lopez's plea and waivers on the record, finding them to have been knowingly, intelligently, and voluntarily made. That same day, the court suspended the imposition of sentence and placed Lopez on formal felony probation for five years. The court also ordered Lopez to make full restitution (with the amount, if any, to be determined at a later hearing) and to provide a DNA sample and print impressions (§ 296). The court imposed a restitution fine in the minimum amount (§ 1202.4, subd. (b)(1)), a court operations assessment (§ 1465.8, subd. (a)(1)), and a court facilities assessment (Gov. Code, § 70373, subd. (a)(1)), and imposed, but stayed, a probation revocation fine (§ 1202.44). Among the conditions of probation were that Lopez would "not own, use or possess any dangerous or deadly weapons, including any firearms, knives or other concealable weapons," would "submit [her] person and property to search and seizure at any time of the day or night, by any probation officer or other peace officer, with or without a warrant, probable cause or reasonable suspicion," and would "obey all laws and orders of the court."

On June 23, 2022, during a probation search involving another individual at a home in Rosemead, officers encountered Lopez in the home and found methamphetamine in a makeup case in a bedroom, and a stun gun and pepper spray in Lopez's

car, which was parked in the driveway.  Lopez was arrested for being a felon in possession of a tear gas weapon (§ 22810, subd. (a)), being a felon in possession of a stun gun (§ 22610, subd. (a)), and possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)).

On June 28, 2022, the court set a probation revocation hearing based on a report from the probation department regarding Lopez's arrest.  (See § 1203.2, subd. (a)(1).)  On August 8, 2022, the court held the probation violation hearing.  Sheriff's Deputy Francisco Arredondo and Deputy Probation Officer Liliana Caudillo testified for the People; both had participated in the probation search on June 23, 2022, which led to Lopez's arrest.  Deputy Arredondo testified as follows:  The target of the search was another probationer, but Lopez was in the house when the officers arrived.  Deputy Arredondo confirmed through Officer Caudillo that Lopez was on probation.  Lopez told Deputy Arredondo that the car parked in the driveway was hers and the keys were inside the house.  She also told Deputy Arredondo that she was living in her car and had arrived at the house that morning.  Deputy Arredondo was informed that Lopez's mother was living in a room in the southeast corner of the house that had an air mattress in it.  Deputy Arredondo directed another sheriff's deputy to search the room and that deputy found methamphetamine inside a makeup container.  Deputy Arredondo found the keys to Lopez's car in the same room; the keys were in an open black purse, in plain view, a "couple of feet away" from the methamphetamine.  A third sheriff's deputy searched Lopez's car and found a stun gun and pepper spray; the deputy notified Deputy Arredondo, who went and observed the stun gun and pepper spray in the car.

4

Deputy Arredondo spoke with Lopez's sister, Sylvia,[2] who was also at the house at the time of the search. Sylvia told Deputy Arredondo that she did not want to get her sister in trouble; her sister was doing good, and she did not want her sister to go down for the methamphetamine; and she wanted to take the charges. According to Deputy Arredondo, Sylvia did not say that the methamphetamine belonged to her and "just said she didn't want her sister to get in trouble."

At the revocation hearing, Sylvia testified for Lopez. She stated that she lived at the house; she rented one of the two rooms and the owner of the house lived in the other room; her mother had just moved in and was staying in Sylvia's room. On the morning of the search, Lopez arrived at the house at around 6:00 a.m. Sylvia then borrowed Lopez's car to get Sylvia's property from the motel where Sylvia had been staying with her husband. Sylvia had her purse and a taser gun in the car. Sylvia stated that "the taser gun I had was . . . always in my purse" and was part of "stuff that I was moving to my house." She later stated regarding the taser, "I brought a lot of my belongings. So I had a few purses, and it was in one of my purses." Sylvia also testified that she carried mace spray with her, stating, "I had it on my mom's car keys. But I took it off to spray with the mace spray. I don't know if I left it in my sister's car or where it's at. But I had it with me." Sylvia indicated that she had the stun gun and tear gas to protect herself because she had been kidnapped

---

[2] Lopez's sister Sylvia also has the last name Lopez. For the sake of clarity, we will refer to Sylvia by her first name, so as not to confuse her with defendant Lopez. No disrespect is intended.

by her husband, who had just been released from custody. Lopez's counsel introduced into evidence a docket of a criminal case which, among other things, showed that the male defendant was charged with kidnapping (§ 207, subd. (a)) and had been served with a protective order prohibiting him from coming within 100 yards of "Silvia L." Sylvia stated that she left a makeup box in the bedroom where she was sleeping with her mother. Sylvia had drugs on her that day; she did not recall whether she left them in her makeup bag in her room, or if she took them with her in Lopez's car. Sylvia's makeup box is pink. When she returned to the house from the motel, Sylvia left her purse and all of her belongings in the car and put the car keys on a table in the living room. She later stated she was "not 100 percent sure" where she put the keys. The police arrived very soon after Sylvia got back from the motel.

At the conclusion of testimony, defense counsel stipulated that Deputy Arredondo wrote in his report that the methamphetamine was found in an orange makeup container and the stun gun and pepper spray were found together in the center console of Lopez's car. The People also submitted a certified rap sheet for Lopez.

The court found by a preponderance of the evidence that Lopez possessed the stun gun and pepper spray, but did not find that Lopez had possessed the methamphetamine. (See *People v. Rodriguez* (1990) 51 Cal.3d 437, 439, 443 [the preponderance of the evidence standard applies in a probation violation determination and the trial court has "very broad discretion in determining whether a probationer has violated probation"].) The court found Sylvia's testimony that the stun gun and pepper spray were hers was not credible. The court revoked Lopez's

6

probation and sentenced her to the low term of two years in state prison for the second degree robbery.  (See § 1203.2, subd. (c) ["Upon any revocation and termination of probation the court may, if the sentence has been suspended, pronounce judgment for any time within the longest period for which the person might have been sentenced"].)  The court decided against placing Lopez back on probation because that option was "[not] suitable under the circumstances given [Lopez's] criminal history"; the court noted that Lopez had an "extensive criminal history since 2006 almost on a yearly basis" and stated, "what is concerning to the court is the second[ ]degree robbery conviction that she sustained in 2020 reflects that it is an escalating seriousness in terms of her criminal history."  Lopez was given 92 days' credit for time spent in custody (based on 46 days spent in custody plus 46 days for local conduct credit).[3]

Lopez filed a timely notice of appeal on August 9, 2022.

## DISCUSSION

The sentence imposed by the trial court after it revoked her probation is a "final judgment of conviction" that is appealable under section 1237, subdivision (a).[4]

---

[3] This credit was for time Lopez had spent in custody after her arrest on June 23, 2022.  Lopez had also spent time in custody before pleading no contest on November 2, 2020, but she waived credit for that time as part of her plea agreement.

[4] "When the trial court in a criminal case decides at time of sentencing to grant the defendant probation, the court may either suspend imposition of sentence or actually impose sentence but suspend its execution.  (See Pen. Code, § 1203.1, subd. (a).)" (*People v. Howard* (1997) 16 Cal.4th 1081, 1084, fn. omitted.)  In November 2020, when Lopez initially pled no contest to the

Lopez did not file the written statement required by section 1237.5 for issuance of a certificate of probable cause. A defendant who appeals following a plea of no contest or guilty without a certificate of probable cause may only challenge the denial of a motion to suppress evidence or raise grounds arising after the entry of the plea that do not affect the plea's validity. (§ 1237.5; Cal. Rules of Court, rule 8.304(b); *People v. Johnson* (2009) 47 Cal.4th 668, 676-677 & fn. 3; see *Johnson*, at p. 678 ["a certificate of probable cause is required if the challenge goes to an aspect of the sentence to which the defendant agreed as an integral part of a plea agreement"].) Lopez did not make any motion to suppress evidence in this case. Thus, Lopez's appeal is restricted to any issues arising after her guilty plea that do not affect the validity of the plea. As applicable here, that essentially means only what occurred in connection with the probation revocation hearing.

We appointed counsel to represent Lopez in this appeal. After reviewing the record, counsel filed an opening brief identifying no appellate issues and requesting that this court independently review the record pursuant to *Wende*, *supra*, 25 Cal.3d 436. This court and counsel both advised Lopez that she could file a supplemental letter or brief stating any grounds for an appeal, or contentions or arguments that she wishes this court to consider. Lopez did not submit any letter or brief.

We have examined the entire record and are satisfied that no arguable issues exist, and Lopez's attorney has complied with

---

robbery charge, the court suspended imposition of sentence. "When the trial court suspends imposition of sentence, no judgment is then pending against the probationer, who is subject only to the terms and conditions of the probation." (*Id.* at p. 1087.)

the responsibilities of counsel.  (*People v. Kelly* (2006) 40 Cal.4th 106, 125-126; *Wende, supra,* 25 Cal.3d at pp. 441-442.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED


WEINGART, J.


We concur:



ROTHSCHILD, P. J.



CHANEY, J.